UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
~~NORTHERN DIVISION~~ Southern Division

RECEIVED
2005 JUL 26 P 4:54

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>RONNIE B. HALES AND WINSTON   )<br>FULFORD,   )<br>)<br>Defendants.   ) | Civil Action No. 1:05CV686-A |

## COMPLAINT

The United States of America, by LEURA G. CANARY, United States Attorney for the Middle District of Alabama, brings this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, or in the alternative, for repayment under theories of unjust enrichment and payment by mistake, and alleges as follows:

### Jurisdiction and Venue

1. This is an action for damages and civil penalties arising from false claims presented, or caused to be presented, by Defendants Ronnie Hales and Winston Fulford to the United States of America ("United States" or "Plaintiff"), in violation of the federal False Claims Act, 31 U.S.C. 3729-33 ("the FCA"). This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. § 1345. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because all Defendants can be found in,

reside in, or transact business in this District and the acts proscribed by 31 U.S.C. § 3729 occurred in this District.

2.  Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b), because all Defendants reside in this District and the acts proscribed by the False Claims Act occurred within the District.

## Parties

3.  Plaintiff is the United States of America, suing on behalf of the United States Department of Agriculture ("USDA").

4.  Defendant Ronnie B. Hales is a domiciliary of the State of Alabama and resides in Hartford, Alabama. In 1999 and 2000, Defendant Hales owned and/or operated farms in Geneva County, Alabama.

5.  Defendant Winston Fulford is a domiciliary of the State of Alabama and resides in Hartford, Alabama. In 1999 and 2000, Defendant Fulford performed various services for Defendant Hales pertaining to the acquisition of farm equipment and parts, and received compensation for his work from Defendant Hales.

## Factual Background

### A) The Watermelon Pilot Program

6.  The Risk Management Agency ("RMA") is an agency of the USDA responsible for supervising the Federal Crop Insurance Corporation ("FCIC") and administrating programs designed to manage risk and support farm income. The FCIC is a

wholly-owned government corporation which provides multi-peril and catastrophic crop insurance protection against losses because of unavoidable causes.

7. Crop insurance is offered to farmers through companies reinsured by the RMA/FCIC. The reinsured company is protected against most of the risk that could result from losses incurred in selling the insurance contracts. At all relevant times, Rural Community Insurance Services ("RCIS") was one of the private insurance companies selling crop insurance that was re-insured by the RMA/FCIC. When the RMA/FCIC reimburses a private insurance company for payments made to farmers under an RMA/FCIC crop insurance program, the payments are made by the United States.

8. Prior to 2000, the RMA/FCIC developed new insurance programs and policies through the use of "pilot programs" that were available to farmers in certain geographic areas provided that eligibility requirements were satisfied. One of the pilot programs developed by the RMA/FCIC in 1999 was the Watermelon Pilot Program, No. 99-040, (hereinafter referred to as the "Watermelon Pilot Program") that was offered in, among other places, Geneva County, Alabama, for watermelon crops to be grown during certain periods in 1999.

9. To be eligible to participate in the Watermelon Pilot Program and obtain an insurance policy, a farmer in Geneva County, Alabama had to: (a) have grown watermelons for commercial sale or participated in the management of a watermelon operation in 1996, 1997, or 1998; and (2) have grown at least 10,000 pounds of watermelons per acre at some location during 1996, 1997, or 1998.

### B) Defendants' Conspiracy to Defraud the United States, False Statements, and False Claims

10.     Defendant Hales was not eligible to participate in and obtain insurance under the terms of the Watermelon Pilot Program because: (a) he had not grown watermelons for commercial sale or participated in the management of a watermelons operation in 1996, 1997, or 1998; and (b) he had not produced at least 10,000 pounds of watermelons per acre at some location during one of those years.

11.     To obtain insurance coverage and indemnification payments under the Watermelon Pilot Program despite his ineligibility for such coverage and payments, Defendant Hales conspired with Defendant Fulford, and others known and unknown, to defraud the United States by falsely representing himself as eligible to participate in the Watermelon Pilot Program and obtain indemnification payments, by making, soliciting, and submitting false statements regarding his prior watermelon-farming experience and activities. Defendants Hales and Defendant Fulford thus knowingly, with deliberate indifference, or with reckless disregard, made false statements and/or submitted false claims in order to defraud the United States.

12.     Though Defendant Hales was not eligible for insurance under the terms of the Watermelon Pilot Program and knew that he was not eligible for the Program, on or about February 12, 1999, Defendant Hales signed and submitted a Multiple Peril Crop Insurance Application/Cancellation Transfer application to purchase crop insurance for his 1999

watermelon crop under the Watermelon Pilot Program. Defendant Hales purchased the insurance through Joseph E. Carpenter, who was an insurance agent for RCIS.

13. In furtherance of Defendants' conspiracy to defraud the United States, on or about February 28, 1999, Defendant Hales submitted false information to RCIS in support of his insurance application indicating that he had grown 4 acres and averaged 52,000 pounds of watermelons produced per acre in 1996; that he had grown 5 acres and averaged 49,000 pounds of watermelon produced per acre in 1997; and that he had grown 5 acres and averaged 38,000 pounds of watermelon produced per acre in 1998.

14. Also in furtherance of Defendants' conspiracy to defraud the United States, Defendant Hales conspired with Defendant Fulford, and others known and unknown, to submit, or cause to be submitted, to RCIS, in or about April 1999, false statements which declared as follows, "We, the undersigned, do hereby certify that Ronnie Hales and Jimmy Bottoms had watermelons during the crop years 1996, 1997, 1998 on Farm Number 4774." One statement was signed by Defendant Hales as well as Defendant Fulford, Danny Stewart, Ronnie Stewart, and William Rivenbark, and is attached as Exhibit A to this Complaint. The other statement was signed by Tim Bottoms as well as Joe Bottoms, Neil Dillard, and Scotty Dausey, and is attached as Exhibit B to this Complaint.

15. During the years 1996, 1997, and 1998, Farm Number 4774 was owned by Jimmy Bottoms. Defendant Hales did not grow or participate in the management of farming watermelons with Jimmy Bottoms on Farm Number 4774 in 1996, 1997, or 1998.

16.     Defendants obtained and submitted these false statements, or caused them to be obtained and submitted, knowing that they were false, in order for Defendant Hales to obtain crop insurance and indemnification payments under the Watermelon Pilot Program. The signatories of these statements, attached as Exhibits A and B, either knew that the statements were false or had no personal knowledge whether Defendant Hales had grown watermelons with Jimmy Bottoms or participated in the management of a watermelon farming operation with Jimmy Bottoms on Farm Number 4774 in 1996, 1997, or 1998, and thus were falsely certifying, or acting in deliberate indifference or in reckless disregard for the truth in signing these documents, at the request of Defendants Hales and Fulford.

17.     Also in furtherance of Defendant's conspiracy to defraud the United States, on or about July 28, 1999, Defendant Hales submitted, or caused to be submitted, eight RCIS Production Worksheets seeking indemnification for losses he sustained to his 1999 watermelon crop. On each and every worksheet, Defendant Hales certified as follows:

> I certify the information provided above, to the best of my knowledge, to be true and complete and that it will be used to determine my loss, if any, to my insured crops. I understand that this Production Worksheet and supporting papers are subject to audit and approval by the company. I understand that this crop insurance is subsidized and reinsured by the Federal Crop Insurance Corporation, an agency of the United States. False claims or false statements made on a matter within the jurisdiction of the Federal Crop Insurance Corporation may subject the maker to criminal and civil penalties under various Federal statutes including the provisions of 18 U.S.C. 1006, 1014; 7 U.S.C. 1506; 31 U.S.C. 3729; 3730; 3801; 3812.

18.     At all relevant times, including when Defendant Hales submitted, or caused to be submitted, the Production Worksheets seeking indemnification, Defendant Hales was not

-6-

eligible for insurance under the Watermelon Pilot Program and had only obtained insurance by conspiring with Defendant Fulford, and others known and unknown, to obtain, make, and submit, or cause to be made or submitted, false statements to RCIS and the United States regarding Defendant Hales' eligibility for insurance coverage under the Program. Thus, the requests for indemnification by Defendant Hales were false claims for payments from the United States to which Defendant Hales was not entitled.

19.  In seeking and receiving watermelon insurance and indemnification under the Watermelon Pilot Program, Defendant Hales concealed and misrepresented material facts, to wit, his failure to grow watermelons for commercial sale or participate in the managing of a watermelon farming operation in 1996, 1997, or 1998 and his failure to produce 10,000 pounds per acre during 1996, 1997, or 1998, when he knew or should have known that this information was material to RCIS, RMA, and the United States, and to his eligibility to obtain and receive insurance payments under the Watermelon Pilot Program. Defendant Hales was aided and abetted by Defendant Fulford, and others known and unknown, in concealing and misrepresenting material facts regarding Defendant Hales' eligibility to obtain and receive insurance payments.

### C.  Payments obtained by Defendants' Fraud

20.  RCIS paid Defendant Hales a sum of at least $2,186,598.00 based on Defendants' false and deceitful statements and requests for indemnification under the Watermelon Pilot Program.

21. RCIS, which is re-insured by RMA/FCIC, an agency of the United States, subsequently submitted to the RMA/FCIC a request for reimbursement for the payments it made to Defendant Hales, based on Defendant Hales' false claims for indemnification under the Watermelon Pilot Program. As re-insurer, the RMA/FCIC, an agency of the United States, reimbursed RCIS from funds of the United States.

22. Absent the false statements and claims made, obtained, and submitted by Defendants, which are detailed <u>supra</u>, Defendant Hales: a) would not have been eligible to purchase insurance under the Watermelon Pilot Program; b) would not have obtained coverage; c) would not have had his insurance premiums subsidized by the United States; and d) would not have been eligible for, or received, any insurance payment for watermelon crop losses from RCIS and/or the United States for the crop year 1999.

23. As a result of Defendants' actions detailed <u>supra</u>, including the false statements made, obtained, and submitted by Defendants to fraudulently enter the Watermelon Program and subsequently obtain indemnification for lost crops, the United States has been damaged in the amount of at least $2,186,958.00.

### First Claim for Relief

### False Claims Act — False Claims Act, 31 U.S.C. § 3729(a)(1) - Presenting, or Causing to Be Presented, False or Fraudulent Claims

24. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 23 as if set forth fully herein.

25. Defendant Hales presented, or caused to be presented, to an officer, employee or agent of the United States, for payment or approval, the false or fraudulent statements and claims detailed supra, with knowledge that they were false, and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

26. The United States has sustained damages as a result of Defendant Hales' false or fraudulent statements and claims in an amount to be determined at trial.

27. Pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq., as amended, Defendant is liable to the United States under the treble damage and civil penalty provision of the False Claims Act for a civil penalty of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant's actions.

## Second Claim for Relief

### False Claims Act — False Claims Act, 31 U.S.C. § 3729(a)(2) - Making, Using, or Causing to be Made or Used, A False Statement

28. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 23 as if set forth fully herein.

29. Defendants made, used, or caused to be made or used, the false or fraudulent statements detailed supra, in order to get a false or fraudulent claim paid or approved by the United States, with knowledge the statements and claims were false, and/or with deliberate

ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

30. The United States has sustained damages as a result of Defendants' false or fraudulent claims in the amount to be determined at trial.

31. Pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended, Defendants are liable to the United States under the treble damage and civil penalty provision of the False Claims Act for a civil penalty of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendants' actions.

### Third Claim for Relief

### False Claims Act — False Claims Act, 31 U.S.C. § 3729(a)(3) - Conspiring to Defraud the United States

32. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 23 as if set forth fully herein.

33. Defendant Hales and Defendant Fulford confederated, agreed, and conspired, together and/or with persons known and unknown, to defraud the United States by getting false or fraudulent claims paid or allowed by the United States, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

34. In furtherance of the conspiracy to defraud the United States by getting false or fraudulent claims paid or allowed, Defendants Hales and Fulford knowingly made, obtained, and submitted, or caused to be made, obtained, and submitted, false statements that

Defendant Hales had grown or participated in the management of growing watermelons with Jimmy Bottoms on Farm Number 4774 in 1996, 1997, 1998, knowing that such false statements were necessary for Defendant Hales to obtain insurance and indemnification under the Watermelon Pilot Program.

35. The United States subsidized Defendant Hales' premiums and paid the false or fraudulent claims submitted by Defendants because of the acts of Defendants and, as a result, the United States has incurred actual damages in an amount to be determined at trial.

36. Pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended, Defendants are liable to the United States under the treble damage and civil penalty provision of the False Claims Act for a civil penalty of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendants' actions.

### Fourth Claim for Relief

### Unjust Enrichment

37. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 23 as if set forth fully herein.

38. Defendant Hales has been unjustly enriched by the indemnification payments paid by the United States, to which he was not entitled, and by his receipt and retention of such payments. In equity and good conscience, Defendant Hales should not retain such profits.

Case 1:05-cv-00686-WHA-TFM   Document 1   Filed 07/26/2005   Page 12 of 14

39. As a result of Defendant Hales' conduct, Plaintiff has sustained damages in an amount to be determined at trial.

### Fifth Claim for Relief

### Payment by Mistake

40. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 23 as if set forth fully herein.

41. Defendant Hales falsely represented himself as meeting the eligibility requirements of the Watermelon Pilot Program. Based on Defendant Hales' false representations, Plaintiff mistakenly believed that Defendant Hales was properly insured under the Watermelon Pilot Program when, in fact, Plaintiff would not have been issued any insurance absent his false representations and his insurance would have been voided.

42. RCIS paid indemnification to Defendant Hales because it mistakenly believed that he was eligible to participate and had insurance under the Watermelon Pilot Program.

43. Plaintiff subsidized Defendant Hales' insurance premiums, and reimbursed RCIS for its indemnification payment to Defendant Hales, because it mistakenly believed that Defendant Hales was eligible to participate in, and had insurance under, the Watermelon Pilot Program.

44. Because of these mistakes of fact caused by Defendant Hales, Defendant Hales has received money to which he was not entitled.

45.     By reason of the actions detailed above, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, United States, demands and prays for judgment as follows:

(a)     On the First Claim for Relief, judgement for treble the amount of actual damages sustained by the United States, plus the maximum civil penalties as are allowable by law against Defendant Hales;

(b)     On the Second Claim for Relief, judgment for treble the amount of actual damages sustained by the United States, plus the maximum civil penalties as are allowable by law against Defendant Hales and Defendant Fulford;

(c)     On the Third Claim for Relief, judgment for treble the amount of actual damages sustained by the United States , plus the maximum civil penalties as are allowable by law against Defendant Hales and Defendant Fulford;

(d)     On the Fourth Claim for Relief, judgment for the amount by which Defendant Hales was unjustly enriched, plus interest therein on a legal rate, against Defendant Hales.

(e)     On the Fifth Claim for Relief, judgment for the amount by which Defendant Hales was paid by mistake, plus interest therein on a legal rate, against Defendant Hales.

(f)     That Plaintiff be granted such other and further relief as the Court shall deem just and proper, including post-judgment interest and the costs of this action.

Respectfully submitted,

LEURA G. CANARY
United States Attorney

By: _____
 for STEPHEN M. DOYLE
Assistant United States Attorney
Chief, Civil Division
JAMES J. DUBOIS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-mail: stephen.doyle@usdoj.gov
        James.dubois2@usdoj.gov

-14-